3-17-0756, Cynthia Basin, accounts by Bradley Skafish v. Marquette Management Inc. Gap will lead by Kyle Renger. Counsel, is it Mr. Skafish? It is, Your Honor. Fireman Redd. Will there be any warning when time's getting closer, should I just keep an eye on the clock? Absolutely. Okay, thank you. May it please the Court. Counsel, I am Brad Skafish here on behalf of the appellant, Cynthia Gassic. What we have before us today is really a pretty simple issue compared to a lot of appeals. You're here to decide, can an entity be a person acting personally for purposes of the Illinois Gender Violence Act? And, of course, we say yes, and I think our position is well-grounded. Interestingly enough, it's a case to first impression for the Illinois Appellate Courts. There have been decisions rendered by several federal district courts, some of which are cited by both sides. But I think what's kind of exciting is that going forward, it's very likely that this is the case that people will look to for that particular issue as to whether or not the Gender Violence Act can be held as to a corporation. By way of brief review of the facts, the plaintiff, Ms. Gassic, alleges that she was sexually assaulted by a man named Jose Canales, that he was employed by Defendant Marquette Management, that there had been previous complaints about Mr. Canales' behavior, and that the Defendant Marquette Management encouraged or assisted in Canales' conduct by allowing him to keep his job, by failing to monitor and supervise him, essentially tacitly approving of this conduct and providing a venue and an opportunity for him to commit the acts of which Ms. Gassic was the victim. The court granted dismissal on behalf of the defendants on a 2-615, and as I'm sure you're aware, the statute reviews to no vote. So, looking to the statute, it says at 740 ILCS 8210, a person commits gender violence when they personally commit or they personally encourage or assist. And of course, what's relevant here is that second phrase, encouraging or assisting. The Gender Violence Act doesn't define person or personally, so we look to outside sources. First of all, the statute on statutes, 5 ILCS 71.05, which says that a person, term person, may extend to a corporation. It also says in Section 1, the act shall be observed unless it's inconsistent with what the General Assembly has held or has written. And in 1.01, the statute on statutes says that it is to be liberally construed to try to get to the intent of the legislature. So, one of the main cases, of course, that we rely on is the McCaleb case. It is a federal district court case, however, it relies heavily on a string of Illinois cases, all of which I believe, or almost all at least, are Illinois Supreme Court cases. Taking essentially the holding of, or the language of the statute on statutes 1.05 a little bit further and saying that a person does include a corporation unless the context, language, or legislative history indicate otherwise. This is important because as the appellees argue, they say, well, plaintiffs want to cite the statute on statutes, but it doesn't say that it must or should be, it just says that it may apply the word person to a corporation. However, the case holdings suggest that it does unless there's some prevailing reason not to. Again, context, language, legislative history. So, looking to the Gender Violence Act itself, the preamble states that the purpose is to provide an adequate remedy to survivors of gender-related violence as a form of sex discrimination. That's important because it gives us a sense for what ills the legislature wants to combat with this statute. It wants to give some sort of recourse to individuals who have been victims of gender-related violence. And then when you get back to the fact that the earlier clause that I mentioned states that you can be found liable for personally committing or encouraging or assisting, I think it's hard to conceive that the legislature wouldn't have intended that second clause in that paragraph to be applicable to corporations. The McCallum case is important not just for that interpretation of the statute on statutes, but its own rationale, which goes through applying the statute on statutes, legislative language, and ultimately deciding that there's no reason a corporation can't be considered a person under the Illinois Hate Crimes Act. I think there's a pretty clear analogy here. They're both intended to combat societal ills when somebody's victimized by another's behavior. And I think it holds true that if a corporation can commit a hate crime for purposes of one statute, there's no reason it should be found that it cannot commit gender-related violence for the other statute when there's nothing about the language of that statute that would make that inconsistent with what the legislature wrote. McCallum cites several state court cases, as I mentioned. Some of those include the AT&S Railway Company, a very old case, about 100 years old, which indicated that the term person does include a railroad corporation. The Healy case, which states that a corporation can be considered a person for purposes of the Dramshot Act. And another thing I like is that it cites Board of Education versus AC&S to kind of give the other side of it, saying, in that case, it didn't include a corporation because the statute said natural person, which shows how easily the legislature could have indicated that they did not want this statute to apply to corporations if, in fact, that's what they wanted. But inclusion of simply the word natural makes clear to anybody that we're talking about human beings, not business entities. Let me ask you this. There's another way to get a corporation in there. If there's a vicarious liability, negligent hiring or negligent retention or something like that. Those are certainly other avenues. I don't think that precludes liability under the Illinois Gender Violence Act. It has some different remedies on behalf of plaintiffs. It has a different statute of limitations. I think there are important reasons why some aggrieved parties may prefer the Gender Violence Act or may find themselves in a situation where that's perhaps their only recourse. But I don't disagree that there are other means of getting to a corporation through, as you say, negligent hiring, negligent supervision, but those are negligence causes of action. I think, though, taking that logic, knowing that that does exist, at least suggests that an interpretation here today that a corporation can be considered a person under the Gender Violence Act would not be some wild extension of the law. We already know that a corporation may be held liable for these same type of acts under common law to interpret a statute in a way that we feel is entirely consistent with the legislature's wording isn't some expansion that's beyond what they would have ever intended. We also cite the Paxson case. That is an Illinois case. That's an important one because it found that the Illinois Open Meetings Act can extend to a corporation where it says any person can institute a civil action. It was intended to combat meetings being held in privacy for the benefit of the public. The court went through the similar type of analysis. A person is not actually defined in that statute, so they look to the statute on statutes. I mentioned that, yes, it can be found to include corporations, but of course not mandatory, so let's look to legislative purpose and where the General Assembly said that they want to require public bodies to act openly. The Paxson court found there's no reason that a corporation shouldn't be able to bring an action when it feels it's the agreed party. I say corporation. I believe it was the mayor's office, so a municipal entity. Well, I mean, corporations are legal people in many respects. But let me ask you something else. Let's switch gears with you. The trial judge granted the defendant's motion to dismiss this account with the presence and then certifies question, and wouldn't a better avenue for this appeal have been a 304A since there's other accounts pending as opposed to a 308? Well, I don't want to get outside the realm of what we're here for. I believe that the trial judge's logic was essentially this is an important issue that should be decided right now. Well, I understand it, but he decided it, and he decided it against you, and there's other accounts remaining, so what he could have done was said, gee, I'll find no just reason to delay enforcement or appeal under 304A, and then appeal his ruling, which is in essence what this 308 is asking us to do because the trial judge already found that the answer to the certified question is no, and then he certifies the question after. My interpretation of that is the trial judge felt a little bit stuck by the fact that the only persuasive authority, if we can call it that, is a series of federal district court cases interpreting, and I think he wanted to see this get to an Illinois appellate court interpretation that could be relied upon by judges such as himself and others because it's that important. Well, rule 304A would allow you to do that, right? It would allow you to do that. It can be the appeal of his ruling that the answer to this proposed question is no. I guess that would be another avenue. Our position is that that wouldn't be germane to the outcome, but that is another way of going about it, I suppose. I mean, every certified question I've ever seen has been certified before the judge answered the question him or herself. Which makes this a little bizarre. It is a little unique. Again, I'm maybe reading between the lines or giving my own personal interpretation, but I believe the judge saw this as one where I'm going to rule against you because I think the very limited authority that is not from Illinois appellate courts is against me to kind of put the onus on you to go out there and appeal this because I think we need some law on this. There isn't anything really we can rely upon. It is a little bit unusual procedurally, but that was the decision that we made at the time. Well, the motion, the petition for rule 308 interlocutory appeal was allowed by this court. If it was improper, you would think the screening process here would have been to deny it. I would hope so. Interestingly, there are some federal cases that are on the plaintiff's side of this. There's a string of them cited by the defense that were cited both in their response brief and also at the trial court level in the motion to dismiss. There's some more recent cases, the Cruz case and the Smith case, especially the Cruz case where the court found that they could apply responding as superior to a sexual discrimination case. They found that the allegations that the employer in that case had received complaints about an individual taking no action, that satisfied the Gender Violence Act's clause regarding encouraging or assisting. It's a very similar fact scenario to what we have here. One issue that is raised in the appellee's response brief is as to why the plaintiff dropped the issue of battery, the straight battery count against the corporation at the trial level. I think it's a little bit of a red herring because one has nothing to do with the other. By way of explanation, I think it's important to point out that the Gender Violence Act creates two different theories. One for committing, one for encouraging or assisting the acts of gender-related violence. What we were proceeding under from day one was the theory of encouraging or assisting. So under other Illinois state cases, we agreed that it's… Let me ask you, so other than encouraging or assisting, what facts did you plead in support of that? We pled that Mr. Canales had been accused of various complaints that had been reported to Marquette Management regarding his behavior, being harassing, crude, lewd conduct towards other women in the past, and that the company essentially did nothing, which allowed him to essentially commit these acts. Because he's a maintenance engineer, the tenants of the building are put in a position where by virtue of his job, there are going to be times when they're alone with him. If he's the type of individual that Marquette has received that complaint about, they shouldn't allow him to have future opportunities to go ahead and commit more of the acts that have been reported against him. And again, since this is a 2615, those well-pleaded facts are admitted for purposes of the motion and the subsequent appeal. So those are the facts of what happened. Whether that would be proven at a later date is another issue, but that's what he's accused of doing and what we're here to analyze. Two minutes, please. I think I'm going to save the rest of the time for rebuttal. You have five minutes for rebuttal. Oh, okay. I wanted to point out as well, then, that several of the cases, the defense sites, starting with Faith Bar, there is some difference here because the court didn't actually get to the issue of responding as superior, whether the corporation could be held liable for the acts of the employee. And in most of these, that is on procedural grounds. As we argue, you'll see that in the Faith Bar case, the plaintiff tried to argue for it, but the court said you haven't offered authority for that proposition. Well, I think we feel we have offered such authority. The Fleming case, they relied on Faith Bar. The court also didn't get to the issue of responding as superior. There's the Flood case, which makes some important holdings in there that we think support our side, one of which is that according to the Flood decision, the statute on statutes does create a presumption that a person applies to corporations, which must be overcome. That is a case where, again, procedurally, the plaintiff attempted to argue responding as superior only in a supplemental brief. The court found that that issue had been waived by not being in the primary original brief and declined to address it. The Sobeck case, which is a more recent one that's cited by the defense, again, the court didn't get to the issue of vicarious liability. It found that the plaintiff had failed to adequately plead gender violence against the employees. Therefore, the ancillary claim against the corporation couldn't survive because of a pleading defect. The Foosting-Foresting case, I'm not sure exactly how the plaintiff's name is said in that one, but, again, it ruled that gender violence can't be brought against a corporation relying on Faith Bar and Fleming and without getting to the issue of responding as superior, which is clearly a significant issue. So none of the federal cases otherwise considered the preamble to the Gender Violence Act, and we think that was an oversight because the preamble talks about the purpose of the legislature to combat gender-related violence as a form of sex discrimination. If you look to other cases, the federal courts routinely apply liability to corporations in situations where the purpose of the act is to combat a form of discrimination. We cite the Parkins case, the Vance case, the Lutz case. These are in their sexual harassment or other forms of harassment. It's not 100 percent on all fours, but I think it's, again, it's analogous authority to say that if we're going to be looking to the federal courts for persuasive authority, let's look what they've done in similar types of cases because the cases are split on gender violence. The ones that come out against our proposition don't seem to have addressed the position as it is framed today. The ones that do find our way we feel like are all on fours, and the underlying state court cases, especially McCaleb and Paxson, I think strongly lead to the conclusion that the Gender Violence Act should be applied to corporations. Oh, count three is for gender violence. Correct. Are you repeating things like after defendant knew or should have known? Those are negligence terms, aren't they? They are certainly commonly used in a negligence context. I don't know. And because they had a duty to your client, that's, again, that's negligence. If there's surplusage in the pleading, then I guess it can be ignored.  I guess it wasn't found on a failure to state a claim, but on a failure of the statute to apply the term person or personally to a corporation. I'm sure our pleadings, any pleadings, could be made a little bit better, and there are probably sometimes overlaps because we're so used to the negligence context. But, again, I would say if there is additional language in there, it can be ignored as surplusage, but there is still plenty of language in there supporting the case against Mr. Canales and the case for encouraging or assisting as long as the court finds that the term person can apply to the corporation. I'm curious who selected the language for the certified question. Was it a mutual decision or did the court propose it? The reason being the choice of the word entity in the certified question is different from corporation. The judge's order says the issue is whether a corporation can be a person. Why was entity selected? In all candor, I don't recall. I don't want to give you an answer off the cuff. I think it may have had to do with the fact that we were dealing with a corporation, but that for this question to come before this panel, it would be nice to have some resolution as to entities, not strictly corporations, so that somebody in the future may not carve out an exception and say, well, this court said corporation. Does that really apply to a municipality? But I do not know that with certain cases. Take this to speculate, and you don't know the answer, and that's fine. Thank you. Thank you. Mr. Geiger. Good morning, Your Honors. Counsel. May it please the Court. My name is Kyle Geiger. I'm Walter Wilcock Matusik on behalf of the appellee market management. And just to address a couple of the factual issues brought up in this argument, plaintiff's complaint is a three-pound complaint. Count one is for battery. Count two is for negligent hiring. And count three is under the IGBA. We filed a motion to dismiss as to count one and count three. Count two, negligent hiring. Count remains. The count for battery, count one, was dismissed by agreement. And count three under IGBA, of course, we have the court's order. Granted, our dismissal is why we're here for today. So as counsel pointed out, and, of course, Marquette denies any prior knowledge of that act, as plaintiff brought up a couple of times today. As counsel did point out, this is a matter of first impression. When the court is being asked to interpret the illness. Does it still account for the negligent supervision and retention? I apologize. That one still remains, yes, Your Honor. I may have had my counsel mixed up. It may have been four instead of two against Marquette. I apologize. That's fine. This court is specifically being asked to interpret the Internal Gender and Violence Act as it relates to whether it's applicable to corporations. The Illinois Supreme Court has not interpreted the IGBA, but has instructed us that this court should observe traditional statutory interpretation and that the court should pick an interpretation that's not unjust, absurd, unreasonable, or inconvenient. This court also must read the statute in the context does not render any terms meaningless surplusage. And one of those terms we're going to talk about today is the term personally, as defined in the terms of perpetrating. And I believe that's a very important term we're going to discuss today. Personally, it's not included in any of the other cases plaintiffs referred to in the Open Meeting Act in the Paxton case or in the Illinois hate crime in the McCain case. Now, in order for the plaintiff. But doesn't the Supreme Court also say that we're supposed to give the statutory language of fullest rather than the narrowest possible meaning? Detention of the ignorant, we're not supposed to narrow it. Well, looking at this, we're supposed to give it the fullest meaning? It does say that, Your Honor. But I also believe that we're supposed to take the words as they're written as well and make sure their meaning are included. So in order for a plaintiff to bring a claim under the IGBA, there are certain elements that must be met. The first claim is that a plaintiff must have been a victim of one or more acts of violence or physical aggression, satisfy the elements of battery under the laws of Illinois. And two, the claim must be against a person or persons perpetrating that gender-related violence. As I touched on before, the IGBA has defined perpetrating as meaning either personally committing the gender-related violence or personally encouraging or assisting the acts or acts of gender-related violence. Now, if we take these two elements one at a time, I believe this Court should find that a corporation cannot commit an act of gender-related violence because it cannot commit an act of battery under the laws of Illinois. Under 720-ILCS. I just want to stop you there. Isn't there a situation where a designated agent of a corporation could personally inflict gender-related violence on a person if it's a designated agent of the corporation? Just so I understand the question, if you're saying that an agent of the corporation within the scope of his employment, I believe that could be a possibility, Your Honor. But as it relates to a victim of sexual violence, I don't believe a designated agent could commit an act of sexual violence as to fall into this statute in terms of batteries defined. Because we have cases that I've said in our brief, and I can discuss now if you like, that says that sexual violence is outside the scope of employment. I hope that answers your question, Your Honor. Okay, thank you. So corporations do not act. Corporations only act if they're employees. Thus, a corporation, I believe, cannot commit an act of gender-related violence. Second, the IGVA requires that a claim must be against a person or persons perpetrating that gender-related violence. As we discussed a bit, and we'll discuss more, it's our position that a corporation is not a person under the IGVA, so claims cannot be brought against it. In doing so, the IGVA defines perpetrating, which means either personally committing gender-related violence or personally encouraging, assisting the act or acts of gender-related violence. Corporations do not do anything personally. Now, taking these elements together, I believe there's only one just and reasonable interpretation of the IGVA, is that it does not apply to corporations. As counsel touched on before, there are several federal court decisions that have analyzed the IGVA, have conducted a statutory interpretation of the IGVA, and concluded that it does not apply to corporations. Those cases being... But the preamble to the legislation talks about equating the gender-related violence as being a form of sex discrimination. And wouldn't that broaden the scope of how this legislation is to be applied? Because on an individual basis, the remedies would already be available to address the violence, but when you're tying it to the discriminatory behaviors, isn't that where the intent would be to broaden the scope of who this applies to in terms of who would bring civil actions against an individual for sexual discrimination through this violence act? But wouldn't it also seem to just make sense that it's also something that applies in a bigger scope to employers or to groups? If we're supposed to look at all of the words, I just don't know how we get past how they are treating this as a type of sex discrimination, and then only applying it to an individual. I don't believe so, and I think it goes with the case law about vicarious liability and plaintiff's argument of spine superiority. Illinois case law has already established that sexual acts is not within the scope of an individual's employment. It's not really a foreseeable act. And I don't believe that the statute here, and I don't have the date of the statute in front of me, I don't think it intended to go outside what the case law has already said, and the well-established case law in Illinois, that employers are not vicariously liable for the sexual acts of their individuals unless there's some type of foreseeability or some type of knowledge about this. Can you foresee a situation where a professional corporation would be one person? I don't, Your Honor. Maybe there's a scenario where an individual and they're able to pierce a corporate veil in some sense, an individual in that context. How about a sole practitioner or lawyer? Sure, a sole practitioner or lawyer could potentially be one person, Your Honor. In this case, of course, we have a management company of a property, which involves many individuals. That goes to the facts. This is a question of law. And the question is fairly broad. It's not limited to corporations. I mean, Your Honor's question, certainly we could see a situation where a corporation was an individual, but I think if we're taking the context of what a corporation does personally, there would have to be some type of law or some type of scenario where that individual acted, and then I think you'd still have the same claim against that individual and then the argument against the corporation. I think they still might be separate, Your Honor. So I believe the statutory interpretation of the statute only gives us one reasonable conclusion, that it does not apply to corporations. Now, despite this reasonable interpretation, plaintiff argues that the IGBA applies to corporations, and we talked about the Illinois Statute on Statute and the Open Meeting Act. When we look at the Illinois Statute on Statute, it states, quote, persons or persons, as well as all words referring to or importing persons, may extend or be applied to politic bodies and corporates as well as individuals, end quote. And, of course, we're stuck in that phrase there, may extend. Now, Illinois Statute on Statutes also has rules of construction that state, quote, shall be observed unless such construction would be inconsistent with the manifest intent of the General Assembly or applicable to the context of the statute, end quote. So on its face, the statute on statute does not mean that a person must or even that it usually does extend to corporations, only that it may. So I believe- Based on the right set of facts. That could be true, Your Honor. But as it relates to statute on statute for corporations, in a certain sense it may, taking the case of the facts of the note today into corporations as a whole, I don't believe it applies to corporations. You're interpreting may to mean it can never be a corporation. Am I construing your argument correctly? My argument is that the IGBA does not apply to corporations, Your Honor. Correct? No. Correct. So I don't believe that the IGBA applies to any direction here. Plaintiff also relies on the Open Meeting Act, as discussed in Paxson, the Boards of Education, for argument that the statute on statutes defies a person including corporations. However, the court in Paxson found that statute on statutes does not require a mandatory application of its definition. In fact, the court concluded that the statute on statutes did not apply in that context, but by the look of the legislative intent of the Open Meeting Act in that case to determine that in that particular instance, the city of Northlake had standing as a person under the act. Further, the Open Meeting Act in Paxson did not include the term personally, like the IGBA does, which would preclude the application to corporations. For those two reasons, the Open Meeting Act and Paxson do not provide us any direction here either. Plaintiff argues that the IGBA claims are akin to Title VII actions and relies on a number of employment discrimination cases. As we all know, in Title VII actions, those are employer-employee relation cases, and this is not a sexual discrimination case. This is a sexual violence case. The assumption in every Title VII case is that there is some type of pre-established relationship between the employer-employee that we do not have in this case. Therefore, I do not believe that Title VII cases provide us any insight here either. Now, Plaintiff argues that the IGBA is akin to vicarious liability, and Plaintiff has argued that this Court should find that the IGBA applies vicarious liability to corporations. However, I believe this argument is also unpersuasive, as Illinois courts have repeatedly held that an employer is not vicariously liable for the acts of sexual assault by its employees because those acts were not reasonably foreseeable and not within the scope of the employment. We have cited a number of cases in our brief of Hines v. Whitmer, Webb v. Harris Steel Company, and Stern v. Brooks College Parliament. If the courts wanted the Plaintiff to be able to proceed under akin to vicarious liability, the courts would have allowed it to proceed under a negligence claim. This brings us back to the statutory interpretation of the IGBA, and we've talked about this before, and I believe that words itself are very important in this case. One, the Plaintiff has to be a victim of sexual assault as defined by under Illinois laws of battery. Two, the claim must be against a person or persons perpetrated in a sexual assault, sexual act. Now, the word personally in the IGBA, again, brings us back to a corporation cannot act personally. It cannot personally commit an act of sexual assault or sexual violence. Since a corporation cannot do anything personally, the IGBA cannot logically apply to corporations, and I believe that a contrary conclusion would render the term personally as it modifies the term encouraging or assisting meaningless surplusage, which would be contrary to the Supreme Court instructions. For these reasons, Marquette Management requests that the court deny plaintiff's obligatory appeal and determine that legal entities cannot be considered a person committing acts personally for purposes of liability under Section 10 of the Illinois Gender and Violence Act and to affirm the trial court's dismissal of count three of a plaintiff's complaint of law. Let me ask one final question. Was there any sort of involvement or speculation on your part? Had this appeal been, in other words, had the trial judge not certified the question, but just said, I'm going to put 304A language in the case, that it ended over on a dismissal of count three, and had the plaintiff appealed that, would your brief have been any different as far as you know? Would that approach have been in a different way? Your Honor, the IGBA provides additional remedies for a plaintiff, which include attorney's fees, punitive damages that aren't applicable in a negligence claim. I don't believe my approach would have been any differently in this case had we brought in a 304A versus, I believe, a 308 in this context. And the trial court certified the question, which we did not disagree with. Okay, thank you. Thank you, Your Honor. Okay, Mr. Scapegood. Thank you, Your Honor. I'll be brief. One of the opening remarks counsel made was that the court should never render a ruling that renders the underlying statute unjust or absurd in interpretation. I don't think by any stretch we have that. There's nothing absurd or unjust about applying the statute to a corporation. On the contrary, I think it is what the legislature wanted, and they could so easily have indicated that they didn't want that if that were in fact the case by saying it applies to natural persons or human beings or any number of other wordings that would not possibly create the confusion of applying to a corporation. Do you think that the term personally does seem to be a sticking point, that it does modify the term perpetrating, and because the corporation cannot act physically, that that is the exclusion of corporations, that that's the out for them? I don't think so. Because of the statute on statutes and the way it's been applied and interpreted in the case law, counsel, I know he made that argument a corporation can't do anything personally. I would say certainly corporations do act personally within the meaning of the law, maybe not in the layperson's meaning, but because the statute on statutes says that the term person... How do corporations act personally? When a corporation being a legal fiction of an unnatural person, when its agents act, it acts. Everything a corporation does is a personal act through its agents. Unless the statute, if we're talking about in the interpretation of a particular statute that says that cannot be the interpretation here. Again, easy to do, wasn't done, I think it goes to the legislature's intention. That's based on the Caleb and all of the cases that underlie it that were cited that are Illinois Supreme Court cases, Atchison, Healy, ACS, Paxson. Counsel said that, well, the statute on statutes says it may extend to entities. And while that is the language, the interpretation of that isn't that the presumption is that it won't. On the contrary, the presumption is that it will. That it will unless doing so conflicts with the context or the legislative history. That's consistent with what we've cited from the Caleb, also flood, which was relied upon by the defense. But the presumption is that the corporation is impeded by the word person, not the other way around. He talked about the Paxson case regarding the Open Meetings Act. And this is relied on in the brief, too. I think they're looking, essentially cherry picking some of the earlier language in that and trying to divert attention away from the final holding. Yes, the court in Paxson did say the statute on statutes doesn't automatically apply the word person to a corporation. And then it went on to go through the same rationale that we've gone through here today. That because it doesn't automatically apply, let's look and see what the language is in the statute. Let's look and see if there's anything contrary that the legislature has intended. And ultimately, it came to the conclusion that the Open Meetings Act should apply to corporations. One minute. Okay, thank you. I'm not familiar with anything that's analogous enough that I would put it before the court and say, look, this Oklahoma statute is the same thing. I think there are other efforts to combat the same type of societal problems. I'm not aware of one. There may be that it is exactly on point. Or I could tell you this is how they've done it there. If there was, maybe we would have settled that. Just one final comment. One of my opponent's final remarks was, this is not a sexual discrimination case. It's a sexual violence case. The important thing here is the General Assembly defines sexual violence as a form of sex discrimination. And that goes to the meaning, the intent, several of the cases that have been cited, why they are analogous, why they're relevant herein. You can't separate the two. A layperson might, but the legislature said this is meant to combat sexual violence as a form of sex discrimination. So where you have one, you have another within the meaning of this statute. Had the trial judge, rather than certifying your question, I'm going to ask you the same question I asked your opposing counsel. Had he entered this, not certified a question, but entered a 304A file? If he's dismissed your case, would your appeal, your briefing, your arguments been different? I don't think they would have been very much different other than some of the framing. But I think the argument would essentially be the same. Again, thank you to the panel. Oh, I'm sorry. I'm so busy wrapping up my stuff. Thank you both for your arguments here this morning. First case of the call. Give me a lunch break. You've got to retrain me. That will be taken under advisement. Written disposition will be issued. We'll be in a brief recess.